Thank you, Judge Ikuda, and may it please the Court, I'd like to reserve four minutes for rebuttal. A building's appearance, how it pays taxes... You know, for the record, you ought to state your name. The recorder won't pick that. I'm happy to do that. Stephan Johnson for the appellants. A building's appearance, how it pays taxes, whether its residents share a kitchen or a bath, and in particular whether its residents are poor, have no bearing on the cost of delivering mail to the building, which is the Post Office's stated reason for excluding SROs from centralized delivery. It costs no more to put mail in an individual slot in an SRO in Tenderloin than to put mail in an individual slot in an apartment building on Knob Hill. And the consequences of dumping the mail at the front door can be severe when you're living check to check and the check disappears. So if I understand the Postal Service right, they are putting the SROs in the category of hotels based on some evidence of transience, and they present their rationale as to why that aspect of those sorts of establishments do cost them more. As I understand it, we're just here to determine if there's a genuine issue of material fact as to whether that belief was rational. Is that correct? It's close, Your Honor. There are two different bases on which you can reverse the district court. The first is to conclude that there's a disputed issue of material fact as to the transience of SROs as a class versus family hotels and other apartment houses. Well, why under the rational basis standard, why aren't we just looking at whether the Postal Service's understanding was rational? I mean, we don't need to establish whether, in fact, it was true or not. It's just whether their belief that there was a rational basis to make that distinction. Well, and that brings me to the second basis, which is you could conclude that there's an issue of pretext here. And I think even the cases that the government cites, Heller v. Doe, FCC v. Beach Communications, the Fritz case, they've been interpreted by this court to make clear that summary judgment can and must be denied where there's a disputed issue of fact as to two things. Number one, whether there's an improper motive. But number two, and this is what I'd like to focus on, whether there's an incorrect, whether the government's stated reason is, in fact, false. And if you look at what the district court said here, its principal basis for granting summary judgment to the defendants was it said this, No evidence exists in this record that the Postal Service approved installation of mail receptacles for the purposes of converting to centralized delivery. Rather, the individual mailboxes attached to certain SROs originated as a result of the city's own mailbox ordinance. That's on page 25 of the record excerpts. In fact, that was false. And we know it is false from the statement of the San Francisco, excuse me, post office manager, Robert Reed, who testified, While I was the manager of customer service operations, we did convert 12 SROs to centralized delivery. This was during the 2004 to 2005 time period, before the adoption of the ordinance. Are those the ones that were grandfathered? Actually, there are 34 or 36 percent of the SROs have been given centralized delivery. Those, unless they received centralized delivery in the last 90 days before the post office changed its tune, they were all grandfathered. But this is important because it shows that the district court was resting on a factually false assertion here. There were many SROs converted to centralized delivery before the Luna letter came in 2008. Now, I'd like to focus on several factors that show pretext. Part of them relate to this practice prior to the adoption of the mailbox ordinance, and part of them relate to other things. Are you saying that that ‑‑ I understood from the briefs, and maybe this was the government's brief, that the local authorities said to the SROs that they could convert, and then the policy of the superiors said, no, you can't, that we're not going to do this. And are you saying that that difference in opinion between the local and the, I guess, higher ‑‑ in the hierarchy decision, policy decision, is evidence of pretext? Partly, Your Honor. There's a lot more going ‑‑ What is that evidence of pretext? Well, the government's stated reason for doing this is that we've had a longstanding policy of treating SROs as hotels. And there's evidence that that's, in fact, false. There's the 12 SROs that were converted from 2004 to 2005. And then if you look at the regulations themselves, the regulations that everyone agree govern this case, they refer to family hotels as eligible for centralized delivery. Now, we submitted expert testimony from Dr. Growth, a professor at Berkeley, who's essentially the nation's leading expert on the history of hotels in the United States. And this is what he says about SROs and family hotels. He says, in the sense of long‑term residence, SRO hotels today are equivalent to family hotels. SRO rooms are fully long‑term homes for the residents. You find it on page 479 of the record. So you have a disputed issue of material fact as to the transience of SROs vis‑a‑vis family hotels, which everyone agrees were eligible for centralized delivery under the governing regulations. So the question is, why are they being treated differently? Does your argument go to a violation of the regulations, which I thought was no longer being argued? I guess I'm not understanding the import. There are, I would say, probably three different levels of our arguments. But setting aside the issue of whether they're acting inconsistent with their regulations, even if you assume that the post office is acting in keeping with its regulations, the very classification of SROs as hotels and institutions and schools, rather than as family hotels, is arbitrary and irrational because of, because as a class, they're not more transient. And there's a disputed issue of fact on that. Well, I thought the government was relying on things like the classification by the city, that they were more like hotels, the advertisement of the SROs to tourists, that they were more like hotels. So they had some evidence in the record that they were relying on. And why isn't that enough? Or why does that make their determination irrational? Well, there can't be any question that it's not enough on the issue of pretext. If you look at what the court said in the Lazy Y case, it says, speaking now of FCC versus Beach and Heller versus Doe and Fritz, the very same cases that the government invokes in this case, these cases do not require us to accept defendant's characterization of what classification they made. Though defendants assert that they classified only on the basis of the costs associated with the prospective lessor's management plans, nothing in the cases they cite requires us to accept their explanation. Our circuit has allowed plaintiffs to rebut the facts underlying the defendant's asserted rationale for the classification. So are you claiming there was an impermissible motive here? That was what we said in Lazy Y. Government stated rationale serves as a pretext for an otherwise impermissible motive. Lazy Y and Squaw Valley established two different ways that you can show pretext. One is an improper motive, and the other is that the proffered rational basis was objectively false. Now, the government has asserted privilege as to its motive, as to the documents that say what was going on. So we're somewhat handicapped in our ability to get into the motive. But the issue of whether their stated rationale is actually false is a basis on which you can reverse. So you have the fact that prior to the mailbox ordinance, they were routinely allowing SROs to qualify for centralized delivery. You have the fact that family hotels, which our experts said are equivalent to SROs, are allowed to get centralized delivery under the regs. You have the fact that in April 2012, the Postal Service deleted this language from its regulations about family hotels. You might ask Mr. Sturgill, my friend, what the basis for that was. You've got the fact that for all but one other category, mobile homes, the Postal Service does not set policy on the basis of transience or permanence. You won't find the word transience in the section of the regulations that pertain to apartments, residential units, family hotels. You'll only find it in the context of mobile homes. And then there's an opportunity for an individualized determination as to whether the mobile home is a transient mobile home park or a permanent one. And if you're permanent, Johnson, is it significant, the purpose of an SRO? Is the purpose of an SRO significant? Well, I think in the sense that it is to provide long-term residential housing, the answer is yes. I mean, there is extensive evidence in the record. Your position that it's to provide long-term housing? Yes. There's extensive evidence on this, Your Honor. It's collected in our brief. There's evidence that speaks to two aspects of this.  The Shaw report. Talk about the average occupancy length for SRO residents. Sometimes purpose and the practice are not identical. Fair enough, Your Honor. I'm afraid I'm not sure where you're going with that, but that's certainly true. I'm not going anywhere. I'm thinking about how the post office should have perceived this situation. And I would expect that they would perceive it based on what they knew to be the purpose of an SRO rather than the practice. The testimony in this record shows that some people stayed there three years. On average, in fact. No. At the Tenderloin Housing Clinic, Your Honor, the average residency was three years. The survey that HSA did showed 70 percent stayed at least two years and many stayed longer. There was extensive affidavits from people who say they stayed 8, 10, 12 years. And there's evidence about the comparative transients. Not for long-term living, and that's why the Postal Service set up the delivery as it did. I don't agree with that, Your Honor. Now, the practice, I gather, may be different from the purpose. But that's the record that we're looking at. Well, which raises a question of why, then, the Postal Service in the past had language that referred to family hotels and why in the past they allowed SROs to qualify. I understand what you're arguing, and I respect the fact that good counsel will take whatever he can take to make his argument. But a family hotel is not identically equal to an SRO. Otherwise, you wouldn't have the different designation. One thing is a family hotel, another is a SRO. Now, you have an expert who gave his opinion that they were substantially the same. But that's what's in the record, an opinion of an expert. That's correct. All that ever can be is an opinion. It's not a fact. It's not a factual argument. Well, it came from — If it is, you tell me. I'm mistaken. Well, I think the transients rates are factual, and there's evidence on those. But I would say, Your Honor, there are different levels to our equal protection claim. And the issue of whether the Postal Service is acting arbitrarily in its application is different from the question of whether there's a rational basis for treating SROs as a class, different from family hotels as a class. And your question speaks to the former, not to the issue of arbitrariness in application. We think at a minimum there's a factual dispute precluding summary judgment there. If I may, I'll reserve the remainder of my time for rebuttal. Thank you. Good morning. May it please the Court, I'm Lowell Sturgill from the Department of Justice representing the Postal Service. As the district court correctly held, requiring the Postal Service to treat SRO hotels as apartment buildings would impose enormous unsustainable costs on the Postal Service, which is statutorily required to cover all its costs, and it's perfectly reasonable, the district court held, for the Postal Service to classify SRO hotels as hotels rather than apartments for numerous reasons. I'm sorry. Go ahead. I was just going to ask you, what are those reasons? So you anticipated my question. Sure. Primarily, the record is clear. In fact, plaintiff's own expert testified that SRO hotels, the tenants there do not sign long-term leases, do not pay security deposits. As a result, they're free to leave from one day to the next. Not only that, they're free to move from between one SRO hotel room to another SRO hotel room. Now, what the plaintiffs, what the Postal Service's experts testify, and the Postal Service personnel, is that in order to have a stable delivery network, the Postal Service needs to rely on classifications that are stable and predictable and that don't require the Postal Service to monitor the use of particular rooms or particular SRO hotels over time. That would be completely unadministerable. So opposing counsel suggests that that may theoretically be the case, but in fact SROs perform identically to apartment buildings, that the transience rate is no different and the function of it is indistinguishable. And so to make this classification is arbitrary and irrational. And they point to evidence in the record to that effect. What's the response to that? A couple. First of all, the studies they cite are a snapshot of how certain SRO hotels have been used at a particular time. The Postal Service's point is that it can't rely on a snapshot because these hotels can change. Again, the key fact is these individuals do not sign long-term leases and they do not provide security deposits so they can go from one to another the next day. Postal Service needs a reliable, stable method over time that does not require the Postal Service to be tracking who's going where over what time. The best I can figure out their rule is that if the city calls somebody permanent, if they've been there for more than 30 days or not, then that should be like an apartment. But again, that kind of rule requires the Postal Service to be monitoring these hotels to determine what the rates of occupancy are. And it would be an impossible matter for the Postal Service to do that. Maybe I'm mistaken, but doesn't this record show that an SRO can come today and check out tomorrow and no questions asked? That's exactly right. That's exactly right. And that, I think, is the central fact in the case and the central reason why it's reasonable for the post office to treat these institutions like hotels. The second thing is there are a number of other points about these studies that the plaintiffs cite. One is that Dan Kelly, who did this first study, he testified, he provided an opinion in 2009 that these SRO hotel residents were among the most transient individuals in the city. And then two years later, he does this phone survey, which he actually, if you look in the record for the data with respect to this survey, they're not there because he admitted that he destroyed them or lost them or something. So I don't know how the plaintiffs can rely on that. So anyway, you don't have the data. But even if you had the data, what he did was he studied, first of all, so it changes over time, right? Over two years, it seems to have changed in his mind. There's no data. And it's not even representative of SRO hotels in general because all he studied were individuals who received housing benefits from the city. So he studied the poorest of the poor and got the skewed results that he got. But again, who's to say this is going to be the same thing tomorrow? And the Postal Service needs to make these judgments in a way that allow it to work within its budget. The Postal Service is supposed to be self-supporting, and the record is undisputed that it's in a dire crisis, again, getting back to costs. And does this record show that there's any prohibition against a person in an SRO who knows he's receiving imported mail, renting a post office box? There's no evidence to that effect at all, Your Honor. And again, the record shows the transience. We discussed transience before, which, again, I think the key to transience is the Postal Service is entitled under rational basis review to make these sorts of judgments about it's supposed to operate as a business. What's the best business model? The plaintiffs want to write a new business model for the Postal Service, and rational basis review does not allow that. And the data that supports the Postal Service's determination of transience in SROs that makes them akin to hotels is what you just said, the fact that they don't have to give security deposits or long-term leases. And then what is the other? You haven't done yourself a survey. What is the other data that supports that? Well, first of all, two other points. The first point is that it's undisputed that the majority of these rooms don't have kitchens or bathrooms in them,  these look like more short-term occupancy propositions than apartments, which do tend to have kitchens and apartments in them. So you'd think that probably people, that's the second rationale. The third is that, you know, I have to say, it takes a lot of gumption for the city to come in here and tell you that these institutions are apartments when the city itself, for innumerable reasons, treats them as hotels itself. We lay this out in our brief, the California Building Code, 84 percent of these SRO hotels are classified R1 as primarily transient. Second, the city hotel conversion ordinance treats rooms without kitchens and bathrooms as guest rooms and not apartments. And third, and this is the one I like the best, you can usually figure out what the real answer to something is by tracking the money. The city taxes these institutions. Over 90 percent of these SRO hotels are taxed as hotels. A hotel license fee is imposed upon them. And the plaintiff's own experts, as we've said in our record, in our brief as well. So, I mean, to believe that these, that the Postal Service has made an irrational judgment here would require you to completely close your eyes to the way the city itself treats these institutions. My colleague talks a lot about pretext and some points on that. First of all, there's utterly no evidence whatsoever in the record about pretext. And there's no evidence that the Postal Service is making any kind of a judgment based on economic status. Rather, this case is about short-term occupancy. The Wong Declaration, which is in our sealed excerpts, is the most important evidence on this. And he says that, and it's undisputed, that the Postal Service provides single-point delivery also to luxury hotels, such as the Fairmont and the Ritz, which are pretty nice. I walked by them yesterday. Extended stay hotels, dormitories and colleges, military installations, assisted living centers, and apartments and condominiums in affluent neighborhoods. Meanwhile, centralized delivery also goes to low-income apartment buildings, to Section 8 voucher housing, to affordable housing and city programs. So, again, the record before you shows that this is not a judgment about income level, any more than the Currier case, which is, I think, the key template for the court to apply in resolving this case. It just, decided by the court a few years ago, involved a case where homeless individuals were challenging a Postal Service regulation, which denied, which provided free postal boxes only to individuals who lacked a physical address, or who had a physical address and had been denied carrier service. And, of course, homeless persons couldn't qualify for a no-fee box under that rule, because they don't have physical addresses. And this Court easily upheld that judgment, finding basically that, again, under rational basis review, the Postal Service is entitled to make these sort of rough-and-ready judgments about, about who should fall on what side of a line. And Supreme Court, the other thing is the Supreme Court has been absolutely clear about this. Each communications case says, Classifying government beneficiaries inevitably requires that some persons who have been almost equally strong claim to favor treatment be placed on different sides of the line. The fact that the line may have been drawn differently at some points is a matter for legislative, rather than judicial consideration. My friend also says that even before the mailbox ordinance, in his terms, the Postal Service routinely granted conversions of SRO hotels to centralized delivery. And really what the record shows is that only 12 of them were converted, and we don't know why. But as Your Honor mentioned, what was happening, and the record is very clear on this, too, is that the Postal Service is a large nationwide organization, like the Department of Justice, and it does the best it can to keep everybody in the local offices on message and on point, but sometimes people, individuals in local offices, do things that are inconsistent with the Postal Service's national policy. And that's what happened here. The end of the record shows that these individuals were pressured into making conversions, and once the national office found out, advised the local people that they were misinterpreting the regulations. And then they themselves, Ms. Luner herself said, you know, you're right. I was wrong. And she corrected her actions in a way that is the only thing she could have done to save the Postal Service from sustaining enormous costs. Our expert, Mr. Bradley, came to the conclusion that because if the Postal Service were to make these conversions nationwide, which presumably we would have to if the plaintiffs are right, it would cost the Postal Service $300 million a year. I can assure you that's the money the Postal Service doesn't have, because the record also shows that just over the last couple of years, the Postal Service has had to close down 287 delivery routes in the city alone. You'll argue what you want, but we aren't going to decide this on the economics. Are we? Can we? I don't think we can. It costs more to do individual delivers to people who live in apartment A than it costs to do neighborhood B where they're single-family dwellings an acre lot apart. I mean, you can make that kind of argument if you want, but I don't know how we decide on the basis of economics. Well, again, I think you're in a situation where, and it is a longstanding policy, the Postal Service' longstanding policy has been to provide single-point delivery to SRO hotels. And what the plaintiffs want is a widespread, broad change, 300 of these, plus whatever happens nationwide. You've got to consider what the cost of that's going to be to an institution that's almost insolvent and has been required to basically try to cover its own costs in a market where things are happening so fast with Twitter and e-mail and everything else. How are they going to stay in business? I don't know. They have an expert report indicating that the cost that the Postal Service identifies as incorrect. And, in fact, there would be cost savings due to other factors that weren't taken into account. And they, in the brief at least, argues that that creates a genuine issue of material fact. So how do we address that, in your view? The district court looked at both reports closely and correctly held, first of all, that the plaintiff's expert report was not supported by facts. What he said was, well, the Postal Service could make a lot of money if it provides centralized deliveries. It could then charge bulk advertisers $0.44 an item to have these delivered. And what the district court said was, first of all, it's complete speculation that the Postal Service could do that, because who knows what bulk advertisers are going to react or not. In fact, the plaintiff's own expert, Jacobson, I also would say, he said that bulk mailers rely on other factors, such as zip codes and economic status, that kind of thing. So their own expert says that it probably wouldn't be the case that the Postal Service could make this money. But, again, it's completely speculative, as the district court said. Plus, again, the plaintiffs under rational basis review don't get to write a new business plan for the Postal Service, which is really what their expert is trying to do. And, second of all, their expert didn't even have his facts right. And this is in the district court's opinion, page 17, footnote 6. I would say also, at this point, that what I'm going to tell you now is in our appellee brief, and the reply brief is completely silent on this. So they have no response to this at all. He assumed that the Postal Service, as I said, would receive $0.44 per item, because this would be first-class mail. But the plaintiff's own expert, Jacobson, testified that only a small percentage of this mail would be first-class mail at the 44% rate. And our expert testified that what the Postal Service really gets for bulk advertising is $0.16. And he also testified that it costs, because it costs more to deliver this kind of mail to individual mailboxes as opposed to generally, that the Postal Service really would only get $0.09 per item. So really, when you look at this, it knocks at least a million dollars off of what their expert says, based on his complete speculation the Postal Service would gain out of this. And again, this is in the district court's opinion. They have absolutely no response, because there is none. There's more I could say. I'm almost out of time. Again, the courier decision, I believe, is the template. This case is indistinguishable from courier. You should follow that and affirm the district court's ruling for the reasons in the court's opinion. If there are no further questions, we would ask you to affirm. Thank you. Thank you. Thank you, Your Honors. I'd like to begin with Mr. Schilder's point about the local officials acting inconsistently with post office policy. Because I do think there's a serious issue of pretext here, and I think the Lunar Letter actually highlights it. If you look at what the Lunar Letter says, it doesn't ever actually say it's prohibited to treat SROs as eligible for centralized delivery. Here's what she says. Given fiscal shortages, it would not be prudent for the post office to continue to work directly with SRO owners on compliance with Section 41E, the mailbox ordinance. We lack the resources to work with individual SRO owners. Under the postal regulations, single-point service is appropriate for mail addressed to persons in hotels, schools, and similar places. Not once do they say that the regulations require excluding SROs. Now, Mr. Sturgill has generally focused on a comparison between apartment houses as a class and SROs. If you look at the regulations, they include another term that I don't think he mentioned, which is family hotels. They also speak about residential units. There's a question here whether the post office is acting arbitrarily in excluding SROs from the idea of being a residential unit or a family hotel. A family hotel is a term that's been around since 1920. Dr. Groth explains this in his report. So that's the only evidence in the record on the meaning of family hotel. And it suggests, under their own regulations, that family hotels, note the word hotel, have been eligible for centralized delivery since 1920. Now, the question is whether there's any meaningful distinction between SROs and those family hotels for purposes of equal protection. You have evidence from our experts saying that their transience rates are equivalent, and you have a policy by the Postal Service of, he says it's isolated, but a dozen different times they did this. That's not quite a one-off problem. Is there a difference in the usual period of occupancy? Your Honor, I think there's extensive evidence about the long-term residences, and it shouldn't be surprising in a city like San Francisco, which is a very expensive family hotel. Is the purpose of a family hotel a residence where you can check in today and check out tomorrow? The record doesn't speak to that specifically, Your Honor. But the record does say that they're equivalent. Does the practice suggest that that's true? That's my understanding, is that these are places where people live for a long time, even though they're paying for the hotel just the way you pay for a commercial hotel. If I say it again in English, maybe you'll understand. I don't know. Does the record show that a family hotel has check-in today, check-out tomorrow, no problem? I believe so. The growth report, if my memory is correct, speaks to exactly how you stay in these places, and they're not long-term leases, Your Honor, and they don't involve security deposits. They involve paying for a hotel service the way you or I would pay for a commercial hotel. Thank you, Your Honor. And we urge the Court to reverse. Thank you. This case is submitted, and the Court for this session stands adjourned.
judges: Farris, Fernandez, Ikuta